UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Virgil Franklin Timms, Jr., | ) | Civil Action No. 5:12-3388-RBH-KDW |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| Carolyn W. Colvin,[1] Acting Commissioner of Social Security, | ) ) ) ) | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.   Relevant Background

   A.   Procedural History

On May 18, 2009, Plaintiff filed an application for DIB under Title II of the Act, 42 U.S.C. §§ 401-433. Tr. 153-55. After being denied both initially and on reconsideration, Tr. 105-08, 111-12, on August 10, 2010, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 113-15. The ALJ conducted a hearing, taking testimony from Plaintiff and a Vocational Expert ("VE"). Tr. 34-76. The ALJ issued an unfavorable decision on May 13, 2011. Tr. 22-29. On July 7, 2011, Plaintiff requested Appeals Council review of the decision, Tr. 18, but the Appeals Council declined, Tr. 1-4, making the ALJ's decision the Commissioner's final

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W.

decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on November 29, 2012. ECF No. 1.

### B. Plaintiff's Background

Plaintiff was 41 years old at the time of the March 21, 2011 hearing before the ALJ. Tr. 38. Plaintiff obtained his GED. Tr. 41. Plaintiff has past relevant work ("PRW") as a foreman with the Greenville Water System, where he worked for 19 years. Tr. 42, 146. His last day of work was May 12, 2009, which is also his alleged onset-of-disability date. Tr. 139. Plaintiff alleges he is unable to work because of anxiety and partial hearing loss due to nerve damage. Tr. 139.

### C. The Administrative Proceedings

#### 1. Plaintiff's Testimony

At the hearing before the ALJ, both Plaintiff and VE Carroll Crawford testified. Tr. 34-76. Plaintiff was represented at the hearing by Angela Vaughan, a non-attorney representative.[2]

Plaintiff testified that he is five feet, 11 inches tall, weighs 300 pounds, and is right-handed. Tr. 39. He is married and has two children, and they all live together in a mobile home. Tr. 39. Their source of income is his wife's job; they also have health insurance through his wife's job. Tr. 40. He has not received workers' compensation benefits or unemployment benefits. *Id.* He has a GED and can read and write. Tr. 41.

Plaintiff testified about his last job. He worked with Greenville Water System for 19 years until he quit in May 2009. Tr. 42. His responsibilities included installing water mains, doing construction, operating heavy equipment, and supervising ten-to-fifteen people at a time.

---

Colvin for Michael J. Astrue as Defendant in this action.

[2] Plaintiff is now represented by counsel, who filed the instant appeal. *See* Tr. 5.

*Id.*, Tr. 56. Plaintiff explained he quit the job because he was having anxiety and panic attacks, and he was afraid he would do something he would regret—such as crash his truck into a building. Tr. 42-44. When asked whether he had thought about other work he could do, he said he had no other background and was not sure what to do. Tr. 46. He said he would be unable to deal with the public. *Id.* He testified that he felt safer at home than at work. Tr. 46-47.

Plaintiff said he stayed at home, did not go to the grocery store, rarely went to restaurants, and did not attend family reunions because of anxiety. Tr. 47-49. He said he did not go to movies or church. Tr. 50. He said he sometimes talked with a friend and sometimes watched television. Tr. 47-50. When asked about household chores, he said he cooked, helped with the laundry, and did cleaning, including vacuuming, sweeping, and mopping. Tr. 51. He said he did not do yard work because the equipment made his ears ring. Tr. 51-52. Plaintiff said he has a driver's license, but he did not drive much or far. Tr. 52-53. He said he enjoyed fishing, and had been within the last year. Tr. 52. Plaintiff said he was able to care for his personal hygiene. Tr. 54.

When asked why he should be put on disability, Plaintiff said the "main problem" was that he did not want to be around people. Tr. 55. Plaintiff said he did not want to hurt anyone or be put in a position where he could hurt anyone. Tr. 60. He said he was concerned he would fight with those with whom he had to interact. Tr. 65-66. When asked about any physical problems, he said the only one he had was ringing in his ears. Tr. 55. He explained that he had a ringing in his ears "all the time," and that the noise level within his head became worse when he got mad or frustrated. Tr. 48, 52.

Plaintiff testified that he went to a psychiatrist every two-to-three months for medication management and received some counseling from the psychiatrist, but that he not receive weekly counseling from anyone. Tr. 48. He had begun counseling in 2008 before he quit his job. Tr. 47-48. Plaintiff testified that he has racing thoughts and finds it difficult to stay focused or to concentrate on one thing at a time. Tr. 57. He does not smoke, drink alcohol, or use drugs. Tr. 54. Plaintiff said he took a two-milligram Xanax four times per day for his anxiety. Tr. 58, 67. Plaintiff testified that Xanax slowed down his thought processes and his physical reflexes. Tr. 58. Plaintiff also said he suffered from insomnia. Tr. 59. Plaintiff said his doctor had tried other medications, but he had an allergic reaction to each one. Tr. 62-63. When asked by the ALJ whether he wanted to be cured, Plaintiff responded that his psychiatrist, Dr. [Rhett] Myers, had told him he could not be cured, but that he would always have anxiety. Tr. 63-64. Plaintiff said he had experienced panic attacks since childhood. Tr. 64.

When asked by the ALJ whether he had physical problems other than the hearing issues of which she should be aware, Plaintiff said he did not. Tr. 69.

2.     VE Testimony

VE Crawford testified that Plaintiff's prior work as a construction foreman was skilled, of medium exertion, with an SVP of 7. Tr. 70. In response to the ALJ's hypothetical question about an individual who could do a broad range of unskilled work but not be around loud noises and have no more than occasional interaction with the public, the VE testified such an individual could not return to Plaintiff's PRW. Tr. 71-72. The VE testified that such an individual could perform work at the medium and unskilled level, such as a hand packager, industrial cleaner, or

hospital cleaner. Tr. 72-73. In response to a question from Plaintiff's Representative, the VE testified such a person would not be able to work if he had not slept throughout the night, heard constant ringing, and took medications such that he would occasionally be off-task. Tr. 74-75.

II.     Discussion

    A.     The ALJ's Findings

In her May 13, 2011, decision, the ALJ made the following findings of fact and conclusions of law:

> (1)   The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> (2)   The claimant has not engaged in substantial gainful activity since May 12, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> (3)   The claimant has the following severe impairments: tinnitus and associated hearing loss; anxiety disorder (20 CFR 404.1520(c)).
>
> (4)   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: claimant cannot be exposed to loud noises in the workplace. He cannot have more than occasional interaction with the public and is limited to unskilled work as a result of his diminished ability to tolerate workplace stressors.
>
> (6)   The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7)   The claimant was born on April 15, 1969 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

>       (8)   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
>       (9)   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>       (10)  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
>       (11)  The claimant has not been under a disability, as defined in the Social Security Act, from May 12, 2009, through the date of this decision (20 CFR. 404.1520(g)).

Tr. 22-29.

   B.   Legal Framework

      1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner

must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his

To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g).  The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is

impairment is disabling at Step 3).

rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    C.    Analysis

Plaintiff argues that the ALJ erred by: (1) failing to find Plaintiff disabled under Listing 1.00Q and 3.00I; and (2) failing to make adequate credibility findings concerning Plaintiff's testimony. Pl's Br. and Pl.'s Reply, ECF Nos. 19, 22. The Commissioner responds that the ALJ's decision is free of reversible error and supported by substantial evidence. Def.'s Br., ECF No. 21.

    1.    Consideration of Obesity

Plaintiff first submits that the ALJ erred because she did not find Plaintiff was disabled based on consideration of his obesity. Pl.'s Br. 3-5. Plaintiff submits that he "weighed three hundred pound[s] and was five feet eleven inches tall." Pl.'s Br. 4. The court notes that was Plaintiff's hearing testimony. *See* Tr. 39. Citing to an NIH Publication, Plaintiff indicates his stated height and weight would have him considered "very severely obese [Obese Class III] with a BMI in excess of 40." Pl.'s Br. 4. However, Plaintiff points to no record evidence concerning his obesity, nor does he reference anything in the record concerning his obesity's impact on his ability to work or perform any functional activities.[4]

---

[4] Although Plaintiff includes a "see also" citation to page 361 of the record transcript in this case, Pl.'s Br. 4, the record herein is only 283 pages long.

Rather, Plaintiff argues the ALJ erred because she did not consider the effects of Plaintiff's obesity pursuant to two of the Commissioner's listed impairments: 1.00Q and 3.00I. Plaintiff sets out the text of those Listings, as follows:

Listing 1.00Q – Effects of Obesity:

Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The **combined effects of obesity with musculoskeletal impairments** can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any **additional and cumulative effects of obesity**.

Listing 3.00I – Effects of Obesity:

Obesity is a medically determinable impairment that is often associated with disturbance of the respiratory system, and disturbance of this system can be a major cause of disability in individuals with obesity. The **combined effects of obesity with respiratory impairments** can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any **additional and cumulative effects of obesity**.

*See* Pl.'s Br. 3-4 (quoting Listing 1.00Q and 3.00I, 20 C.F.R. pt. 404, subpt. P, app'x 1, §§ 1.00Q, 3.00I) (emphasis added by court).

Plaintiff then cites an out-of-circuit case about considering obesity and generally argues the ALJ is required to provide a full assessment of claims considered and reasons for rulings, Pl.'s Br. 4-5 (citing *Arnett v. Astrue*, 676 F.3d 582 (7th Cir. 2012), *inter alia*). However, Plaintiff does not further explain his argument, nor does he cite evidence in support of his claim

that the ALJ was required to consider and discuss Plaintiff's obesity at the Listing stage (or otherwise).

As the Commissioner points out, Def.'s Br. 9-10, and as the language emphasized in bold above indicates, the Listings to which Plaintiff refers are not applicable in this case. Listing 1.00Q concerns the consideration of obesity as a possible contributing factor when evaluating specific *musculoskeletal* listings. Plaintiff has never alleged any musculoskeletal impairments, and the court finds no discussion of such in the record. Similarly, Listing 3.00 concerns respiratory system impairments, and § 3.00I indicates that obesity might contribute to respiratory problems, and its additional effects should be considered when evaluating specific *respiratory* impairments. Here, Plaintiff has never alleged that he had any respiratory impairments, nor does the record contain evidence of any. Accordingly, the undersigned is of the opinion that the ALJ did not err by failing to consider Plaintiff's obesity pursuant to Listing 1.00Q or 3.00I.

Plaintiff also briefly argues that the ALJ erred by failing to consider "how [Plaintiff's] very severe obesity would have affected his ability to maintain pace and concentration." Pl.'s Br. 5. Again, Plaintiff offers no explanation and cites no evidence for this assertion. Nowhere in the administrative process has Plaintiff alleged that his obesity placed any limitations on his ability to concentrate, or any other aspect of his functional capacity. In fact, the ALJ noted Plaintiff's height and weight on the record at the beginning of the March 2011 hearing. Tr. 39. Later in the hearing, Plaintiff repeatedly assured the ALJ he had no other potentially disabling health issues other than those already discussed. Tr. 55 (ALJ asking "Do you have any physical problems . . . other than your --- ears?"; Plaintiff replying "—just ring in my ears."); 69 (same). Nowhere during the hearing does Plaintiff indicate obesity impacted his ability to function. Nor does

review of the administrative record indicate Plaintiff raised obesity as an impairment that impacted his ability to work or otherwise function. *See* Tr. 139 (Plaintiff's application for DIB, indicating "[a]nxiety and partial hearing loss due to nerve damage" are the "illnesses, injuries, or conditions" that limit his ability to work).[5] As noted above, Plaintiff points to no record evidence in support of his new argument. The Commissioner is to "consider only impairment(s) [a claimant] says [he has] or about which [the Commissioner] receive[s] evidence." 20 C.F.R. § 404.1512(a). The burden of proof and production rests on Plaintiff to show limitations. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting burden of proof and production is on claimant at steps one through four of the sequential evaluation); *Russell v. Chater*, No. 94-2371, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (noting a claimant must explain the basis of his theory as to how obesity limits his functional ability; speculation is not permitted). As the Ruling Plaintiff briefly cites, Pl.'s Br. 4, makes clear, conjecture such as Plaintiff now seeks is prohibited:

> [W]e [the Commissioner] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p, available at 2002 WL 34686281, at *6.

Here, Plaintiff never alleged obesity-related limitations on his concentration (or otherwise), nor has he provided any evidence to support such a claim. This portion of Plaintiff's

---

[5] In responding to this question on his application, Plaintiff expounds upon his conditions of anxiety and hearing loss, including noting "constant ringing in [his] ears," "constant worries," and "problems concentrating." Nowhere in his response does he make any reference to his weight or to any issues with his musculoskeletal or respiratory systems. Tr. 139.

argument regarding consideration of his obesity is without merit.[6] The ALJ did not err with respect to Plaintiff's obesity.

Moreover, even if the ALJ does err by failing to expressly consider a claimant's obesity, the undersigned agrees with the Commissioner's argument that such error is harmless as there is no record evidence of functional limitations. *Cf. Elder v. Astrue*, No. 09-2365, 2010 WL 3980105 at *9 (D.S.C. Oct. 8, 2010) ("As neither her medical records, nor her own statements, provide [evidence of the effect on her functioning or ability to work resulting from] her obesity, any failure of the ALJ to explicitly address [the claimant]'s obesity is only harmless error.").

Here, the only mention of Plaintiff's obesity as a potentially limiting factor is found in environmental limitations that medical consultant ("MC") Steven Fass would place on Plaintiff. *See* Tr. 239. Dr. Fass indicated that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, and humidity, as well as hazards because of his obesity. He also noted Plaintiff's obesity could contribute to "early fatigue." Tr. 239, 242. However, MC Fass provided no further discussion of those limitations. Importantly, MC Fass opined Plaintiff could still work. Tr. 242. Thus, further review of the record would change nothing. In addition, the record shows that Plaintiff weighed 275 pounds at the time he applied for disability. Tr. 138.[7] Accordingly, Plaintiff had been working despite his obesity, and the record is clear that he voluntarily left that job because of anxiety, not because of obesity or any functional impairments related to it. *See* Tr.

---

[6] To the extent Plaintiff is making a separate argument that the ALJ's hypothetical question to the VE was flawed because it did not include the limiting effects of obesity on Plaintiff's ability to concentrate, Pl.'s Br. 5, that argument also fails. An ALJ's hypothetical question is sufficient when it is based on an accurate RFC. *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). In this case, the hypothetical was based on the RFC the ALJ found Plaintiff possessed. Tr. 25. Plaintiff has not demonstrated the RFC was not supported by substantial evidence.

[7] Although Tr. 138 is not dated, elsewhere, Tr. 144 refers to the form's having been initiated on May 18, 2009, which is when Plaintiff filed his application.

42-43. These facts further demonstrate that additional review would have no effect on the case's outcome, and that any error of omission was harmless. In sum, the ALJ did not err with regard to Plaintiff's obesity. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming the ALJ's decision when "there is no question but that he would have reached the same result notwithstanding his initial error"). Plaintiff's initial allegation of harmful error is without merit.

### 2. Findings Regarding Plaintiff's Credibility

Plaintiff also argues the ALJ erred by failing to make adequate credibility findings regarding Plaintiff, citing to the portion of the ALJ's decision that found the "'claimant's statements concerning the intensity, persistence, and limiting effect of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.'" Pl.'s Br. 5 (citing Tr. 27). Labeling this finding a "blanket conclusion," Plaintiff submits the ALJ did not provide the requisite details and reasoning explaining why she found Plaintiff less-than-fully credible. Pl.'s Br. 5-6. The Commissioner defends the ALJ's decision, arguing it contains sufficient discussion of the credibility findings and is supported by substantial evidence. Def.'s Br. 13-15.

SSR 96-7p requires that, prior to considering Plaintiff's subjective complaints, the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of her subjective complaints, including pain. *See* SSR 96-7p; *see also* 20 C.F.R. § 404.1529(b); *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996). The

requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of his testimony and the record as a whole. If she rejects a claimant's testimony about a claimant's pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (*quoting Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. *See Mickles*, 29 F.3d at 927 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . .").

      Here, the undersigned finds the ALJ's credibility analysis is supported by substantial evidence and was sufficiently specific. As an initial matter, the court notes the portion of the ALJ's decision cited by Plaintiff is not the only part of the decision addressing Plaintiff's credibility. Rather, the ALJ noted Plaintiff's claimed disabling limitations caused by anxiety, ear-ringing, limited concentration and uncontrollable thoughts were not supported by the record evidence. Tr. 27. To the extent Plaintiff is raising an argument that the ALJ erred by doing no

more than reciting "boilerplate" language concerning Plaintiff's credibility, that argument is without merit.

The ALJ adequately considered record evidence and explained her findings in discounting Plaintiff's credibility that he was precluded from working. For example, the ALJ noted that all the objective record evidence indicated Plaintiff was capable of basic, unskilled work. Tr. 27. The ALJ also noted Plaintiff had received very little treatment for any of his impairments. *Id.* The ALJ considered the notes from Plaintiff's treating mental health professional, Dr. Myers, and noted they included no work-related limitations. *Id.* (citing exs. 10F, available at Tr. 245-50 and 17F, available at Tr. 276-83). Further, the ALJ noted Dr. Myers's mental status examination in August 2007 revealed Plaintiff's thought processes were generally normal, and he found only "slight" to "obvious" limitations. Tr. 26 (citing ex. 3F, available at Tr. 211). The ALJ also noted that Dr. Myers's treatment notes continued into 2011, and that nothing in those notes indicated Plaintiff's symptoms were not controlled by medication or that his "severe anxiety disorder" had specific work-related limitations beyond those the ALJ found in Plaintiff's RFC. Tr. 26 (citing ex. 17F, available at Tr. 276-83).

Additionally, to the extent the court were to apply the so-called "enhanced credibility doctrine"[8] here, Plaintiff has not satisfied his burden of demonstrating that the ALJ's credibility determination is not supported by substantial evidence. Plaintiff's long history of working, while certainly commendable, does not outweigh the ALJ's reasoned and supported credibility

---

[8] Plaintiff argues the court should apply the so-called "enhanced credibility doctrine" here. Pl.'s Br. 7 (citing *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979), *Nanny v. Mathews*, 423 F. Supp. 548 (E.D. Va. 1976)). Defendant counters the doctrine is not recognized in the Fourth Circuit. Def.'s Br. 15 (citing *Clark v. Astrue*, No. 3:12–cv–00122, 2012 WL 6728441 at *3 (W.D.N.C. Dec. 28, 2012)). The undersigned offers no opinion on whether the doctrine is applicable in this court.

determination. The undersigned recommends Plaintiff's allegation that the ALJ committed reversible error in analyzing Plaintiff's credibility be dismissed.

III.     Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record, including evidence regarding Plaintiff's mental and physical condition, and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 1631(c)(3) of the Act, 42 U.S.C. § 405(g), it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

February 10, 2014                                                          Kaymani D. West
Florence, South Carolina                                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**